Good morning, your honors. My name is Nina Marino. I represent Byron Dredd. I would ask to reserve three minutes for rebuttal. Unless your honors direct me otherwise, I do not intend to address the government's waiver argument because pursuant to both Yeager and the merits, the question here is whether the issues were necessarily decided by the jury's acquittal on count two, right? That is correct. And tell me why it's necessarily decided. Because, your honor, this case, from its indictment, through opening statements, through the jury's trial, the evidence, the development of theories, to closing argument, was essentially two sides of a coin. One side was my side. My side was my client made a mistake in what he saw. The government's side was my client, Mr. Dredd, lied about what he saw. There was no third side. There was no he learned side. There were two sides. There were, the government had a singular... The problem is, though, there are two, there are kind of two discrete things that are going on. There's his report, and then there's his talking to the FBI, which is separate and apart. And it's a little, that lying to the FBI is a little bit like how Al Capone got it on the tax evasion. You know, they can't get them on all the murders, but they somehow get you on the tax evasion. The lying to the FBI, whether people like it or not, seems to be a discrete crime. And so that's what I'm struggling with. And if the case was tried with alternative theories, then I think that would be an issue. But that's not how the case was tried. The government made a decision, a tactical decision, to go all or nothing, to make the double-down argument. Why are we tied to the government's theory? I think you're right that the government's theory, they charge multiple counts. So their theory, it was a lie from the get-go. It was a lie at the time of the drafting of the report. It was a lie that got sustained through the FBI interview. But isn't our task here to examine the evidence that was admitted to try to determine whether the jury, by acquitting him on count two, necessarily decided the issues that the government would have to prove if it were to retry him on count three? Why are we now bound by the government's theories and arguments at trial? Well, also, too, if we were bound by what the government and the defense said, then there wouldn't be any point for the jury to have a job. You know, lawyers would love for the jurors to do exactly, follow exactly what they say. But they get to hear the evidence and then decide it based on the law and the facts. So if I understand the Court's question correctly, the Court is asking me if, based on the evidence presented during the trial, irrespective of the fact that there was no argument made in connection with that evidence, that the jury could somehow, on its own, come up with a third theory of he learned. Do I understand that question correctly? Well, I would put it a little bit differently than that. I mean, the fact that the government argued that he lied both as to count two and count three didn't necessarily preclude the jury from finding that, well, we don't think that he knowingly falsified the police report on count two. That has different elements, right? And particularly in light of his trial testimony, we think the government hasn't proven that beyond a reasonable doubt. But an entire year later, when he interviewed with the FBI, he's now learned additional facts that would suggest that the statements in the report were false, but yet he doubled down on it in order to help out his colleagues in the sheriff's department. Why isn't that a viable argument for the government at this point? It's not a viable argument. And the reason is, is that the so-called, and I put this in quotes, facts that the government alludes to as demonstrating a change in mens rea are really nothing more than untethered pieces of the record. And I will speak to each one of them. One of those untethered pieces of the record is my client saw Mr. Dredd's, saw Mr. Creo's picture on the news. And? And what? My client was on the stand. If this was a theory that the government wanted to pursue with the jury, why was not a question asked of my client about that? Is it any different than me saying, I wore a red dress on Tuesday? What are we going to conclude from that? That my calendar's bad? That I didn't know Valentine's Day was Wednesday? That I protest Valentine's Day? What? What do we conclude from the fact he saw his picture on the news? How long was the news show? Did you hear any of the audio? What did you learn from that? Did you talk to anybody about that after? Nothing like that happened. So why did the jury have a hard time then? I wasn't the jury able to come to a verdict on that count. Yeager precludes us from asking that question, Your Honor. Yeager says we cannot look to what the jury did not decide. We can only look to what the jury did decide. If we agree with your theory, there's no reason in the world the jury would have any trouble finding him not guilty, right? No, no, no. Okay, why not? Because there's another element. The elements aren't the same. They heard something you're not telling us. The jury heard something? Otherwise they would have found consistently for the other two verdicts, right? Because there's only two sides of the coin, right, counsel? Only two sides of the coin. And they found one side twice, but not on the third. I wonder why that was. Your Honor, there are a million reasons why a jury does not reach a verdict. They didn't buy your argument. Somebody didn't. Right? Your Honor, they could have been tired, and that's why they didn't reach a verdict on count three. They could have been hungry. There's a million reasons. And Yeager talks about all these reasons as to why a jury could not reach a verdict. Yeah, but you're the one that just told me there's two sides to the coin, only two sides to the coin. Because, Your Honor, that's how this case was tried. Well, your case, I think, raises a pretty interesting issue because the statement in the report and the statements made to the FBI in 2012 that forms the basis of the 1001 false statement charge are really similar statements, right? And so I think your argument might have a little more traction, but for the fact that, or I put it to you to kind of address my concern, given his trial testimony that the attack was really a blur, and the reason why he couldn't equivocate in the police report was really he wasn't allowed to, why can't we deduce from that that the jury accepted that? And that's what led to the acquittal on count two, right? Because the statements are the same, but there's a different explanation proffered by the defendant himself as to why the report was not knowingly false. And that explanation that he proffered was I wasn't allowed to make statements that are unequivocal, and that persuaded the jury. He can't have that explanation with regard to the FBI interview because that was a year later. So why can't we look at that fact? Because the government never explored that when he was on the stand. They never explored that with any of the witnesses. That was never the case. But it's in evidence. The dates are in evidence when he did the report, when he talked to the FBI. They can make their own inferences. They don't have to make the inference that either of you want to make from the evidence. But we're talking about untethered pieces of the record where there is no evidence developed, where there is no theory around them. Okay. I think we have your argument in mind. If you want to reserve, you might want to reserve at this point. I'll reserve now. Thank you. Good morning, and may it please the Court. Suresh Appleby, bodicharji for the United States. Should the Court reach the merits of defendant's collateral estoppel claim, there's no dispute as to what standard of review applies here. The district court's factual findings in its order denying defendant's motion to dismiss are reviewable for clear error, which means that this Court must accept those factual findings as true unless they are shown to be illogical, implausible, or wholly without support in the record. The core factual finding in the district court's order here is that defendant's indisputably false statements in 2011 and 2012 were made under significantly different circumstances. To be indisputably false, you have to have some kind of scienter. I mean, so you're reading his mind and you're saying he's lying. That's the same thing the defense is accusing you of. So I would parse, actually, the falsity of the statements in two ways. There was an undisputed element. The factual statements in the report and the factual statements in the interview were indisputably false. And there was no evidence presented to the contrary. So the Court is correct. What was at issue was defendant's knowledge in 2011 and his knowledge in 2012. And with the Court's permission, I'd like to briefly review the three categories of evidence upon which the district court premised its core foundational factual finding about these significantly different circumstances. They were, first, the statements in themselves, second, defendant's opportunity to equivocate when he made the statements, and third, the overall circumstances under which the statements were made. Now, in his 2011 report, defendant stated unequivocally that Gabriel Carrillo was the first aggressor who pushed and punched defendant's fellow deputies. During his 2012 FBI interview, defendant was twice asked for his recollection of the Carrillo incident, once before his report was placed in front of him and once after. And in both instances, defendant unequivocally and consistently stated that Gabriel Carrillo was the first aggressor who swung at, pushed, and punched defendant's fellow deputies. Now, those factual assertions were indisputably false. Gabriel Carrillo was handcuffed the whole time. So it's essentially irrelevant to the truth of the statements, what defendant knew about the handcuffing. The statements themselves were false. So the second category of evidence the district court considered was whether or not defendant had the opportunity to qualify or equivocate. And in that regard, the district court first turned to defendant's trial testimony where he testified under cross-examination that at the time he wrote his 2011 report, he was not permitted to qualify his statements. He was not permitted to say he was unsure. It was undisputed at trial that at the time of his 2012 interview, there was no such restriction placed on him. In fact, as the record unequivocally shows, at the very outset of his interview, defendant was expressly admonished that the interview was voluntary, but if he chose to speak with the FBI, he had to tell the truth and the full truth. Does it create some problems for the government? This is counsel's two sides of the coin theory, as I understand it, that the government's theory is that it was false when it was made at the time that he wrote the report, and it was false when he repeated the very same statements to the FBI agents. The facts are very simple. He was either an eyewitness to the incident or he wasn't an eyewitness to the incident, right? And so the government's theory is that he wasn't an eyewitness to the incident and he basically lied about it, and he repeated that lie a year later instead of correct the record. So what does that do to the government's case? So I'd answer with two distinct points, Your Honor. First is defendant is seizing upon this language of doubling down, which was essentially a rhetorical device or a trial theme, and trying to say that that satisfies his burden of collateral estoppel without actually considering what the government argued and the evidence that it pointed to in closing. Were you trial counsel? I was one of the trial counsel, yes, Your Honor. And if you turn to the record at ER 531, the government's counsel in closing highlighted the exact same circumstances regarding the falsity in defendant's mental state in 2012 as the district court noted in its own order. The government noted at ER 531 that defendant's statements in his interview were unequivocal. He didn't hedge his statements. He didn't try to offer any kind of clarification. He says, quote, I saw a punch. The government noted that a year and a half transpired between the time that defendant wrote his report and the time he had his interview. The government noted in closing that defendant saw Mr. Carrillo's picture in the news. The government noted in closing that defendant knew there was an ongoing FBI investigation, that he was subpoenaed to testify before a grand jury, and that he voluntarily, well, he asked to be interviewed at the U.S. Attorney's Office. Instead, the government acceded to that request. And so that brings us to the third category of evidence that the district court considered in coming to its core factual finding, the context in which defendant's 2012 statements were made. He was subpoenaed to testify before a grand jury in an ongoing criminal investigation. He had seen Carrillo's face on the news. He had reviewed his report with his counsel before the interview. And in the interview, when he was given every opportunity to equivocate, he doubled down on the unequivocally false statements in his report. So that's, there's a difference between doubling down with no changed circumstances and what happened here and what the trial record established here, doubling down despite significantly different circumstances in which the two statements were made. So how do the elements of all of the offenses compare? In the argument part, Your Honor, the elements of count two that were disputed was defendant's knowledge of the falsity of his statements, not the falsity of the statements themselves, and whether defendant intended to impede or obstruct an ongoing Federal investigation. The government stands by the argument made below, that both of these elements were in fact contested, and the jury could have acquitted on either basis without reaching the question of whether defendant knowingly lied in 2012. And what was disputed in count three was whether defendant had that mens rea, whether he knew the undisputably factually false statements were in fact false, and whether those statements were material to an ongoing FBI investigation. So these are, the elements are in fact distinct, and the defendant here, it's undisputed, bears the burden of establishing that a general verdict of acquittal is tantamount to necessarily deciding an ultimate issue of fact that forecloses his retrial on count three, an especially high burden here, especially in light of the standard of review. So the government has reviewed the record evidence the district court relied upon in coming to its core factual finding. So what, so when you do, if you are allowed to retry this defendant, excepting for the moment Mr. Dredd's assertion that the government doubled down on the first trial, does the government argue that it's free to assert in a new trial on count three a theory that it did not raise in the first trial? The government does assert that it's free to do so, but it would be speculative to guess at how the government's going to try this case because the government, under the rules of evidence, could try the case very similarly. It's still able to prove that the statements in the report were factually false.  And the parties are free to do that. And in terms of trying it differently, really it's a question of whether the parties frame the issues differently and whether the parties argue the case to the jury differently. But as Judge Wynn stated, the jury here was not tied to the government's theory, was not tied to the defense's theory. And as you stated, Judge Callahan, if there were really only two sides, if it were this or that, that clear cut, then there would be no purpose for a jury trial anyway. And there would be no function for the jury here if there weren't specific disputes about what the facts in the record actually showed. And so here, under the clear error standard, if the court must accept as true that defendants' two sets of statements were made under significantly different circumstances, it necessarily follows from that that a rational jury could acquit him of knowingly lying in 2011 without deciding and, in fact, without even reaching the question of whether he knowingly lied in 2012, particularly if he spoke in 2012 under significantly different circumstances when he had the opportunity to equivocate and when he had the opportunity for advanced reflection on the truth of his statements. Well, is the 2011 all tied to the report? Yes, Your Honor. And the 2012 is tied to the FBI interview? That's correct. They're completely distinct occurrences. The statements, and as the district court noted rightly in its order, the falsity of the statements does not change over time. The question is whether defendant's knowledge in 2011 was the same as his knowledge in 2012, and it is the defendant's burden to establish that a general verdict of acquittal is tantamount to a specific factual finding that he did not knowingly lie in 2012. And I see my time is almost up. The only thing I would say in closing, Your Honor, is that the Supreme Court in the Bravo-Fernandez case that we've cited has very clearly spoken to general verdicts of acquittal. Because they are unreviewable on appeal, this Court should be especially guarded in its application of the collateralist doctrine in criminal cases such as these. The defendant has not met his burden of showing that the district court clearly erred in its factual finding or that the jury necessarily decided his guilt or innocence on count three by acquitting him of count two. All right. Thank you for your argument. Thank you, Your Honor. Your Honors, there's something important I want to bring to the Court's attention The ultimate issue in this case was Dredd's veracity, was his truthfulness. That was what the jury had to determine with respect to all of the counts. When the lower court said what I seek to foreclose is a retrial of count three, that's not what I seek to foreclose. I seek to foreclose along the same lines as Romeo and Hernandez and Ninth Circuit precedent, a retrial of Dredd's veracity. And that is because of the way the case was tried. The case was not tried as just described by the government. The case was not tried with distinct counts. The government went all in. And I would call the Court's attention to Coughlin, which is a court out of the D.C. Circuit. The reason it's cited in the government's opening brief on page 32. But the reason I call the Court's attention to this case is because in that case, and this is an interesting case, this was a guy who worked for the Navy and he was in the Pentagon during 9-11. And basically he made a claim for a victim's compensation claim. And he did this over a period of time, made claim, claim, appealed the claim. And what happened is he was acquitted on some counts and they hung on other counts. And what the Court did in its analysis, and I think this is the proper analysis, is the Court looked at each, at the arguments, both defense and government, with respect to each count. In that case, the government did not go all in. The government gave the jury alternate theories. The government said with respect to, for example, count 4, you could find this or you could find this. With respect to count 5, you could find this or you could find this. That never happened in this case. The government, when I say double down, when I say two sides of the same coin, when I say throw it all in, the government had a singular theory in this case. He lied. They never wavered. That word learned, that phrase change in mens rea, different thinking, never. You could do a word search in the transcript. You'll never find those words. They were never said to the jury. These untethered pieces of the record are nothing more than untethered pieces of the record. They are not evidence of anything. The fact that in a four-hour-plus interview, my client says something, says other things, affirms what is in his report, forgets some things that's in his report, remembers things that weren't in his report, for example, that he was a videographer, he wasn't the videographer. Eighteen months later, he made a memory mistake. Even Judge King said, the lower court said, memory doesn't get better, it gets worse. The court, the lower court. You're about two minutes over, so please wrap up your argument. I will, Your Honor. Thank you. I would really like this Court to consider what the ultimate issue in this trial was, not some imaginary trial. This trial. All right. Thank you both for your arguments. This matter will stand submitted.
judges: Callahan, Nguyen, Bataillon